UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HENLEY FINANCE, LTD, | |
| Plaintiff, | No. 2:20-cv-01834-TLN-KJN |
| v. | **ORDER** |
| GOYETTE & ASSOCIATES, INC., a California corporation; BIOSCIENCE ENTERPRISES, INC., a California corporation; and DOES 1-20, inclusive, | |
| Defendants, | |

This matter is before the Court on Defendants Goyette & Associates, Inc. ("Goyette") and Bioscience Enterprises, Inc.'s ("Bioscience") (collectively, "Defendants") Motions to Dismiss. (ECF Nos. 11, 10.)  Plaintiff Henley Finance, Ltd. ("Plaintiff") opposes Defendants' motions. (ECF Nos. 12, 13.)  For the reasons set forth below, the Court DENIES Defendants' motions. (ECF Nos. 11, 10.)

///

///

///

///

I.      FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiff brings this action against Defendants alleging the following: (1) conversion of funds; (2) breach of contract; and (3) breach of fiduciary duty.  (*See* ECF No. 1.)  Plaintiff is a foreign finance "company incorporated in England and Wales."  (*Id.* at 2.)  Goyette is a California corporation, allegedly providing services including business advice, legal services, and escrow services.  (*Id.*)  Biosciences is a Delaware corporation with its principal place of business in California.  (*Id.* at 3.)

A non-party Robert Kay ("Kay"), a resident of England, was allegedly interested in investing in the "CBD/Hemp trade."  (*Id.* at 4.)  On March 15, 2019, Kay's purported first investment in the industry was in Commodity Clearinghouse Corporation ("Commodity") in California, in the sum of $30,000.  (*Id.*)  In completing the transaction, the money was first transferred to an escrow account organized by Goyette.  (*Id.* at 5.)

From July to September 2019, Kay was allegedly physically present at a "Bioscience/[Commodity] office" in California, where he "met with and came to know" Bioscience's principal executive officer.  (*Id.* at 6.)  Bioscience's principal executive officer and Kay purportedly discussed that Kay "had a business relationship with [Plaintiff]" and "a relationship of trust and confidence with [Plaintiff]'s founder."  (*Id.* at 6.)  Bioscience's principal executive officer requested Kay introduce him to Plaintiff's founder "to discuss Bioscience obtaining short term financing," and Kay purportedly obliged.  (*Id.*)

On July 2, 2019, Plaintiff and Bioscience entered into a loan agreement whereby Plaintiff agreed to make a short-term loan to Bioscience.  (*Id.* at 8.)  The term of the loan agreement commenced on the date the loan funds were transmitted from Plaintiff to Bioscience.  (*Id.*)  The term of the loan agreement was to end no earlier than thirty days from Bioscience's receipt of the funds and no later than sixty days after Bioscience's receipt of funds (anticipated by September 3, 2019).  (*Id.*)

Goyette allegedly agreed to provide escrow services for the Plaintiff-Bioscience loan.

---

[1]      The following of recitation of facts is taken, sometimes verbatim, from Plaintiff's Complaint.  (ECF No. 1.)

2

1    (*Id.*)  Plaintiff alleges Defendants agreed the funds in the escrow account would not leave the

2    escrow account "except on the terms as required under the loan agreement and as instructed by

3    [Plaintiff]."  (*Id.*)  On July 10, 2019, Plaintiff transferred $999,995 to the Goyette escrow account.

4    (*Id.*)  On July 11, 2019, Kay, acting as Plaintiff's authorized agent, called and spoke with

5    Goyette.  (*Id.* at 9.)  Goyette allegedly confirmed to Kay that the funds had been received and that

6    the funds were not to be distributed without the express permission of Richard Butler ("Butler"),

7    Plaintiff's founder and authorized agent.  (*Id.* at 6, 9.)  Additionally, Plaintiff alleges Bioscience's

8    principal executive officer wrote to Goyette on September 7, 2019, indicating that none of

9    Plaintiff's funds were to be used without the express written authorization of Butler.  (*Id.* at 9.)

10          Plaintiff alleges Goyette disbursed Plaintiff's funds to Bioscience (and allegedly others,

11   though there is no mention to whom) without the express authorization of Butler.  (*Id.*)  Further,

12   Goyette allegedly disbursed $5,000 of Plaintiff's funds to itself without Butler's authorization.

13   (*Id.*)  Plaintiff alleges Defendants have not returned any funds to Plaintiff to date.  (*Id.* at 10.)

14          Plaintiff filed its Complaint on September 11, 2020, seeking compensatory damages

15   through three causes of action: (1) conversion of funds; (2) breach of contract; and (3) breach of

16   fiduciary duty.  (*Id.* at 10–12.)  Goyette filed a motion to dismiss on November 11, 2020,

17   pursuant to Federal Rules of Civil Procedure ("Rule" or "Rules") 12(b)(1) and 12(b)(6).  (ECF

18   No. 11.)  Bioscience separately filed a motion to dismiss on November 11, 2020, pursuant to

19   12(b)(1).  (ECF No. 10.)  On December 23, 2020, Plaintiff opposed Defendants' motions.  (ECF

20   Nos. 12, 13.)  Goyette filed a reply on December 30, 2020, and Bioscience filed a reply on

21   December 31, 2020.  (ECF Nos. 14, 16.)

22        **II.    STANDARD OF LAW**

23              A.  Federal Rule of Civil Procedure 12(b)(1)

24          A motion under Rule 12(b)(1) challenges a federal court's jurisdiction to decide claims

25   alleged in the complaint.  Fed. R. Civ. P. 12(b)(1); *see also id.* at 12(h)(3) ("If the court

26   determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the

27   action."); *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009) (holding the court may

28   determine jurisdiction on a Rule 12(b)(1) motion unless "the jurisdictional issue is inextricable

                                                    3

1   from the merits of a case") (internal citations omitted).

2   　　　A Rule 12(b)(1) motion attacking subject matter jurisdiction may be either facial or

3   factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). When the motion is a facial attack,

4   the court only considers the allegations in the complaint and any documents attached to the

5   complaint or referred to in the complaint. *Gould Electronics Inc. v. U.S.*, 220 F.3d 169, 176 (3rd

6   Cir. 2000). The court accepts all the material factual allegations in plaintiff's complaint as

7   true. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). "[J]urisdiction must

8   be shown affirmatively, and that showing cannot be made by drawing from the pleadings

9   inferences favorable to the party asserting it." *Shipping Financial Services Corp. v. Drakos*, 140

10  F.3d 129, 131 (2nd Cir. 1998) (citing *Norton v. Larney*, 266 U.S. 511, 515 (1925)).

11  　　　When a Rule 12(b)(1) motion attacks the existence of subject matter jurisdiction "in fact,"

12  no presumption of truthfulness attaches to the plaintiff's allegations. *Thornhill Pub. Co., Inc. v.*

13  *Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). Rather, "the district court is not

14  restricted to the face of the pleadings, but may review any evidence, such as affidavits and

15  testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v.*

16  *United States*, 850 F.2d 558, 560 (9th Cir. 1988). "Once challenged, the party asserting subject

17  matter jurisdiction has the burden of proving its existence." *Robinson*, 586 F.3d at 685

18  (quoting *Rattlesnake Coal. v. E.P.A.*, 509 F.3d 1095, 1102 n.1 (9th Cir. 2007)).

19  　　　　　　　　　B. Federal Rule of Civil Procedure 12(b)(6)

20  　　　A motion to dismiss for failure to state a claim upon which relief can be granted under

21  Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of a complaint.

22  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Rule 8(a) requires that a pleading contain

23  "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.

24  Civ. P. 8(a); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). Under notice pleading in

25  federal court, the complaint must "give the defendant fair notice of what the . . . claim is and the

26  grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal

27  citation and quotations omitted). "This simplified notice pleading standard relies on liberal

28  discovery rules and summary judgment motions to define disputed facts and issues and to dispose

                                                        4

1    of unmeritorious claims."  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

2          On a motion to dismiss, the factual allegations of the complaint must be accepted as true.

3    *Cruz v. Beto*, 405 U.S. 319, 322 (1972).  A court must give the plaintiff the benefit of every

4    reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  *Retail*

5    *Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963).  A plaintiff need not allege

6    "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to

7    relief."  *Twombly*, 550 U.S. at 570 (internal citation omitted).

8          Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of

9    factual allegations."  *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).

10   While Rule 8(a) does not require detailed factual allegations, "it demands more than an

11   unadorned, the defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678.  A

12   pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the

13   elements of a cause of action."  *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678

14   ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

15   statements, do not suffice.").  Thus, "[c]onclusory allegations of law and unwarranted inferences

16   are insufficient to defeat a motion to dismiss" for failure to state a claim.  *Adams v. Johnson*, 355

17   F.3d 1179, 1183 (9th Cir. 2004) (citations omitted).  Moreover, it is inappropriate to assume the

18   plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws

19   in ways that have not been alleged."  *Associated Gen. Contractors of Cal., Inc. v. Cal. State*

20   *Council of Carpenters*, 459 U.S. 519, 526 (1983).

21         Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough

22   facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim

23   has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

24   reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at

25   678.  While the plausibility requirement is not akin to a probability requirement, it demands more

26   than "a sheer possibility that a defendant has acted unlawfully."  *Id.*  This plausibility inquiry is "a

27   context-specific task that requires the reviewing court to draw on its judicial experience and

28   common sense."  *Id.* at 679.  Thus, only where a plaintiff fails to "nudge [his or her] claims . . .

1  across the line from conceivable to plausible[,]" is the complaint properly dismissed. *Id.* at 680

2  (internal quotations omitted).

3       In ruling on a motion to dismiss, a court may consider only the complaint, any exhibits

4  thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201.

5  *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v.*

6  *Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998); *see also Daniels-*

7  *Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (the court need not accept as true

8  allegations that contradict matters properly subject to judicial notice).

9       If a complaint fails to state a plausible claim, "'[a] district court should grant leave to

10  amend even if no request to amend the pleading was made, unless it determines that the pleading

11  could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122,

12  1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995));

13  *see also Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in

14  denying leave to amend when amendment would be futile).  Although a district court should

15  freely give leave to amend when justice so requires under Rule 15(a)(2), "the court's discretion to

16  deny such leave is 'particularly broad' where the plaintiff has previously amended its

17  complaint[.]" *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir.

18  2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

19  **III.   DEFENDANTS' MOTIONS TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL**

20  **PROCEDURE 12(B)(1)**

21       Defendants seek dismissal under Rule 12(b)(1) on the basis that, pursuant to California

22  Corporations Code Sections 2105 and 2203, Plaintiff lacks standing because Plaintiff is a foreign

23  corporation and engaged in intrastate business without first obtaining a certificate of qualification

24  from the Secretary of State.[2]  (*See* ECF No. 10-1 at 1-2; ECF No. 11-1 at 6.)  Plaintiff argues it

25  did not transact intrastate business, but rather made an investment as a foreign shareholder.  (*See*

26

27  _____

[2]      It is undisputed Plaintiff is a foreign corporation, incorporated in England and Wales.
28  (*See* ECF No. 1 at 2.)  Plaintiff does not state that it obtained a certificate of qualification from the Secretary of State.

ECF No. 12 at 5.)  At issue is whether Plaintiff transacted intrastate business and was thus required to obtain a certificate of qualification from the Secretary of State prior to commencing this action.

While a plaintiff bears the burden to sufficiently allege standing (*see Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) ("[t]he party invoking federal jurisdiction bears the burden of establishing [standing]")), in a motion to dismiss pursuant to California Corporations Code Sections 2015 and 2203, the defendant, as the moving party, bears the burden of proving: (1) the action arises out of the plaintiff's transaction of intrastate business; and (2) the action was commenced prior to the plaintiff qualifying to transact intrastate business.  *Osprey 1 LLC v. January, Inc.*, No. C 17-06620 WHA, 2018 Westlaw 905916, at *3 (N.D. Cal., Feb. 15, 2018) (citing *United Med. Mgmt. v. Gatto*, 49 Cal. App. 4th 1732, 1740 (1996)); *LeBlanc Nutritions, Inc. v. Advanced Nutra, LLC*, No. Civ. S-05-0581FCDJFM, 2005 WL 1398538, at *3 (E.D. Cal. June 14, 2005) (citing *United Sys. of Ark., Inc. v. Stamison*, 63 Cal. App. 4th 1001, 1007 (1998)).

A.  <u>Whether the Action Arises Out of Plaintiff's Transaction of Intrastate Business</u>

Goyette contends Plaintiff filed this lawsuit over a dispute arising from Plaintiff's intrastate business conducted in California on the basis that Kay's actions were performed as Plaintiff's agent and amount to Plaintiff engaging in intrastate business.  (*See* ECF No. 11-1 at 11.)  Bioscience contends it is "unclear" if this lawsuit is over a dispute arising from Plaintiff's intrastate business conducted in California, and without Plaintiff's affirmative allegations as to whether or not Plaintiff engaged in intrastate business, Plaintiff has failed to allege standing.  (*See* ECF No. 10-1 at 4.)  Plaintiff opposes Defendants' arguments, stating that it did not transact intrastate business in California. (ECF No. 13 at 16; ECF No. 12 at 12.)

In California, a foreign corporation is prohibited from transacting intrastate business without first obtaining a certificate of qualification from the Secretary of State.  Cal. Corp. Code § 2105(a).  The California legislature has defined "transact[ing] intrastate business" as "entering into repeated and successive transactions of business in this state, other than in interstate and foreign commerce."  *Id.* § 191(a).

///

7

1              *i.*      *Goyette's Argument*

2          Goyette claims Kay's actions were on behalf of Plaintiff and are sufficient to establish

3  Plaintiff engaged in intrastate business.  (*See* ECF No. 11-1 at 11–12.)  Goyette states that Kay's

4  prior dealings — including his investment of $30,000 in Commodity, and his physical presence at

5  a California Bioscience office from July to September 2019, during which he purportedly "'met

6  with and came to know'" Bioscience's principal executive officer — were as Plaintiff's agent and

7  amount to Plaintiff engaging in intrastate business.  (*Id.*)  Goyette further argues Kay acted as

8  Plaintiff's agent to establish relations with California companies for Plaintiff to pursue

9  investments.  (*Id.* at 11.)

10         Plaintiff states Kay's actions were not done as Plaintiff's agent and thus do not amount to

11  Plaintiff having engaged in intrastate business.  (*See* ECF No. 13 at 11, 16.)  While Plaintiff

12  concedes Kay was "associated" with Plaintiff, had a business relationship with Plaintiff, and had

13  "a relationship of trust and confidence with [Plaintiff]'s founder," Plaintiff alleges Kay's sole act

14  as an agent of Plaintiff was a nearly six-minute phone call to Goyette to provide escrow

15  instructions.  (*See* ECF No. 1 at 4, 6, 9.)  Plaintiff argues Kay's other actions alleged in the

16  complaint were his own and did not involve Plaintiff.  (*See* ECF 13 at 11, 16.)

17         Whether a foreign entity transacts intrastate business is a question committed to the

18  "peculiar facts" of each case.  *See Le Vecke v. Griesedieck W. Brewery Co.*, 233 F.2d 772, 775

19  (9th Cir. 1956) (citing *W. Pub. Co. v. Superior Ct. of City & Cnty. of San Francisco*, 20 Cal. 2d

20  720, 727 (1942)).

21         The Court finds Goyette's argument that Kay acted on behalf of Plaintiff unpersuasive.

22  Plaintiff solely alleges Kay acted as Plaintiff's agent during Kay's phone call to Goyette, which is

23  insufficient to amount to intrastate business.  (ECF No. 1 at 9); *see Bos. v. ClubCorp USA, Inc.*,

24  No. CV 18-3746 PSG (SSX), 2019 WL 4418130, at *7 (C.D. Cal. June 24, 2019) (finding a

25  phone call between a Texas corporation and a California corporation constituted interstate rather

26  than intrastate business); Cal. Corp. Code §§  167, 171 ("'Foreign corporation' means any

27  corporation other than a domestic corporation" and "'Domestic corporation' means a corporation

28  formed under the laws of this state"); *see also Hinden/Owen/Engelke, Inc. v. Wailea Kai*

1    *Charters*, 949 F. Supp. 775, 777 (D. Haw. 1996) (under a nearly identical Hawaiian law, there

2    was no intrastate business transaction even when the plaintiff's agent met with the defendants in

3    Hawaii.  The remainder of Kay's activity — such as the $30,000 investment and his physical

4    presence in a California Bioscience office — in the state is irrelevant to Plaintiff and Bioscience's

5    loan agreement, since Plaintiff does not allege Kay was acting on behalf of or as an agent of

6    Plaintiff.

7         Plaintiff alleges a singular transaction in the form of a loan to Bioscience.  (ECF No. 1 at

8    8.)  Though the agreement was purportedly executed in Sacramento County, under the plain

9    language of the statute, a single loan is not sufficient to give rise to "repeated and successive

10   transactions of business in this state."  (ECF No. 1 at 10); Cal. Corp. Code § 191(a); *see also*

11   *LeBlanc Nutritions, Inc. v. Advanced Nutra LLC*, No. Civ. S-05-0581FCDJFM, 2005 WL

12   1398538, at *3 (E.D. Cal. June 14, 2005) (finding no intrastate business transaction on two

13   transactions between California and Japan); *Thorner v. Selective Cam Transmission Co.*, 180 Cal.

14   App. 2d 89, 91 (1960) ("[A] foreign corporation is not doing, transacting, carrying on, or

15   engaging in business in a state, by making loans outside the state to residents thereof . . .").

16        Therefore, Goyette has not met its burden to prove Plaintiff transacted intrastate business

17   in this state.

18                    *ii.    Bioscience's Argument*

19        Bioscience argues, pursuant to sections 2015 and 2203 of the California Corporations

20   Code, Plaintiff has failed to sufficiently allege standing on the basis that it is "unclear" if this

21   lawsuit is over a dispute arising from Plaintiff's intrastate business conducted in California.  (*See*

22   ECF No. 10-1 at 4.)  Plaintiff opposes, stating Bioscience has failed to meet its burden of proof

23   that Plaintiff conducted intrastate business.  (ECF No. 12 at 10.)

24        In the instant case, Bioscience has not met its burden.  *See Osprey 1 LLC*, 2018 WL

25   905916, at *3.  Instead, Bioscience improperly attempts to shift its burden of proof to Plaintiff,

26   stating it is Plaintiff's burden to sufficiently allege standing.  (ECF No. 10-1 at 4.)  While Plaintiff

27   is required to allege standing, the defendant bears the burden to prove the complaint arises out of

28   the Plaintiff's intrastate business.  *Hurst v. Buczek Enterprises, LLC*, 870 F. Supp. 2d 810, 818

                                           9

1   (N.D. Cal. 2012) (a "defendant who seeks to challenge a plaintiff's standing under Cal. Corp.

2   Code §§ 2105 and 2203 may do so by motion to dismiss for lack of standing[,]" but the

3   "defendant, as moving party, bears the burden" of proof) (quoting *LeBlanc*, 2005 WL 1398538 at

4   *3) (internal quotations omitted).  Rather than provide evidence of Plaintiff's intrastate business,

5   Bioscience argues it is "utterly vague, ambiguous, and unclear" whether Plaintiff engaged in

6   intrastate business.  (*See* ECF No. 16 at 2.)  Without anything beyond these cursory arguments,

7   the Court cannot find that Bioscience has met its burden of proof.

8        Therefore, Bioscience has not met its burden to prove Plaintiff transacted intrastate

9   business in this state.[3]

10       B.   Whether the Action Was Commenced Prior to Plaintiff Qualifying to Transact

11            Intrastate Business

12       Defendants contend Plaintiff commenced this action prior to obtaining a certificate of

13   qualification to transact intrastate business from the Secretary of State.  (ECF No. 10-1 at 4; ECF

14   No. 11-1 at 12.)

15       A foreign corporation that transacts intrastate business without first obtaining a certificate

16   of qualification shall not maintain any action upon intrastate business in any court of this state.

17   Cal. Corp. Code § 2203(c).

18       As Defendants have not met their burden to prove Plaintiff transacted intrastate business,

19   the Court need not consider whether Plaintiff commenced this action prior to obtaining a

20   certificate of qualification, pursuant to California Corporations Code Section 2203.[4]

21

22   [3]    Plaintiff seeks an exemption to the certificate requirement, pursuant to California
     Corporations Code Sections 191(c)(1) and 191(c)(8).  (ECF No. 12 at 11–12; ECF No. 13 at 14-
23   15.)  However, the Court need not consider the exemption, since, as discussed above, Defendants
     have not met their burden of proof that Plaintiff transacted intrastate business.
24

25   [4]    Defendants request the Court take judicial notice of documents demonstrating Plaintiff's
     failure to obtain a certificate of qualification from the Secretary of State.  (ECF Nos. 10-4, 11-6.)
26   However, since Defendants failed to meet their burden of proof that Plaintiff transacted intrastate
     business, the Court need not determine if Plaintiff obtained a certificate of qualification from the
27   Secretary of State. Accordingly, Defendants' requests for judicial notice (ECF Nos. 10-4, 11-6)
     are DENIED.
28

1    Therefore, Defendants' motions to dismiss pursuant to Rule 12(b)(1) (ECF Nos. 10, 11)

2    are hereby DENIED.

3    **IV.    GOYETTE'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL**

4    **PROCEDURE 12(B)(6)**

5    Goyette seeks dismissal under Rule 12(b)(6) on that basis that Plaintiff has not sufficiently

6    alleged claims upon which the Court can grant relief for: (1) conversion of funds; and (2) breach

7    of fiduciary duty.  (ECF No. 11-1 at 6-7.)  The Court will address each claim in turn.

8    A.   Conversion of Funds

9    Goyette seeks dismissal of Plaintiff's conversion claim under Rule 12(b)(6) on the basis

10   that Plaintiff has failed to state a claim for conversion upon which relief can be granted.  (ECF

11   No. 11-1 at 6.)  Plaintiff opposes, arguing it has sufficiently alleged facts to state a claim for

12   conversion.  (ECF No. 13 at 20.)

13   "'Conversion is the wrongful exercise of dominion over the property of another.'"

14   *Mindys Cosms., Inc. v. Dakar*, 611 F.3d 590, 601 (9th Cir. 2010) (quoting *Oakdale Vill. Group v.*

15   *Fong*, 43 Cal. App. 4th 539, 543 (1996)).  The elements of a conversion are: (1) the plaintiff's

16   ownership or right to possession of the property at the time of the conversion; (2) the defendant's

17   conversion by a wrongful act or disposition of property rights; and, (3) damages.  *Id.*  The Court

18   will examine each element in turn.

19   i.    *Whether Plaintiff Had Ownership or Right to Possession of the*

20   *Property*

21   Plaintiff alleges it was the owner of the funds transferred to Goyette.  (*See* ECF No. 1 at

22   10).  Goyette argues Plaintiff neither owned nor had the right to possess the funds at the time

23   when it claims Goyette disbursed the funds.  (*See* ECF No. 11-1 at 13).  Goyette compares

24   Plaintiff's right to possession of the funds to a contractual right of payment.  (*Id.*)

25   "To maintain a conversion action, 'it is not essential that the plaintiff shall be the absolute

26   owner of the property converted but she must show that she was entitled to immediate possession

27   at the time of conversion.'"  *In re Bailey*, 197 F. 3d 997, 1000 (9th Cir. 1999) (quoting

28   *Bastanchury v. Times-Mirror Co.*, 68 Cal. App. 2d 217, 236 (1945).  "California courts generally

11

1   permit actions for conversion where a readily ascertainable sum has been misappropriated,

2   commingled, or misdirected." *Sims v. AT & T Mobility Servs. LLC*, 955 F. Supp. 2d 1110, 1118

3   (E.D. Cal. 2013); *see also Weiss v. Marcus*, 51 Cal. App. 3d 590, 598 (1975).

4        In the instant case, Plaintiff alleges it transferred its own funds to Goyette to hold in an

5   escrow account.  (ECF No. 1 at 8.)  This in itself is sufficient to demonstrate ownership of the

6   funds.  *See ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016) (finding the

7   plaintiff's allegation of a transfer of funds into a client trust account was sufficient to allege

8   ownership).  Goyette argues, by the terms of the loan agreement [5], the earliest Plaintiff would

9   have any right to possession of the funds was thirty days after it transferred the funds to

10   Bioscience.  However, since Plaintiff alleges it provided the funds to Goyette to be held in

11   escrow, including specific instructions to not move the funds without Plaintiff's consent, Plaintiff

12   had a right to possession.  (ECF No. 1 at 8); *Chase Inv. Servs. Corp. v. L. Offs. of Jon Divens &*

13   *Assocs., LLC*, 748 F. Supp. 2d 1145, 1179 (C.D. Cal. 2010), *aff'd*, 491 F. Appx. 793 (9th Cir.

14   2012) (finding the plaintiff retained its ownership interest while its property was held in escrow).

15        Goyette also argues that a "'mere contractual right of payment, without more, does not

16   entitle the obligee to the immediate possession necessary to establish' a cause of action for

17   conversion."  (ECF No. 11-1 at 13) (quoting *In re Bailey*, 197 F. 3d 997, 1000 (9th Cir. 1999).

18   However, Plaintiff has alleged more than a mere contractual right of payment, as it has identified

19   a specific identifiable sum in which it has an alleged ownership.  *See Gulf Ins. Co. v. First Bank*,

20   No. CIV S-08-209 LKK/JFM, 2008 WL 2383927, at *3 (E.D. Cal. June 4, 2008) (holding the

21   plaintiff sufficiently alleged a cause of action for conversion by identifying a specific sum of

22   undisbursed loan funds); *see also Travelers Cas. & Sur. Co. of Am. v. RBC Centura Bank*, No.

23

24       [5]     Goyette requests the Court consider the Plaintiff-Bioscience loan agreement (ECF No. 11-1, Ex. A), pursuant to the incorporation by reference doctrine.  (ECF No. 11-1 at 7 n.1.)  As Plaintiff refers to the loan agreement throughout its complaint, it is indeed incorporated by reference and can be considered by this Court on a motion to dismiss. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (holding the defendant may offer a document in a motion to dismiss that the plaintiff refers to extensively in the complaint or that forms the basis of plaintiff's claim); *see also Khoja v. Orexigen Therapeutics*, Inc., 899 F.3d 988, 1002 (9th Cir. 2018) (holding the incorporation by reference doctrine allows the court to treat "certain documents as though they are part of the complaint itself"); Fed. R. Civ. P. 10(c).

1  2:08-CV-00369GEBEFB, 2008 WL 1925017, at *2 (E.D. Cal. Apr. 29, 2008) (holding the

2  plaintiff sufficiently stated a claim for conversion by alleging a right to immediate possession of

3  funds after the borrower defaulted).

4        Therefore, Plaintiff has sufficiently alleged facts to support the first element of

5  conversion.

6  ///

7                    ii.      Whether Goyette's Conversion Was by a Wrongful Act

8        Plaintiff alleges Goyette's unilateral transfer of funds was a wrongful act, committed in

9  violation of the provided escrow instructions.  (ECF No. 1 at 9.)  Goyette contends Plaintiff

10 consented to Goyette's holding and disbursing the funds when Plaintiff voluntarily transferred the

11 money to Goyette's account.  (ECF No. 11-1 at 13–14.)  Goyette further argues it did not

12 wrongfully transfer the funds, since the loan agreement does not contain any conditions on

13 Bioscience receiving the money and that transferring the funds was consistent with Plaintiff's

14 own intent as expressed in the loan agreement.  (*Id.* at 14.)

15       "It is not necessary that there be a manual taking of the property; it is only necessary to

16 show an assumption of control or ownership over the property, or that the alleged converter has

17 applied the property to his own use."  *Farmers Ins. Exch. v. Zerin*, 53 Cal. App. 4th 445, 451–52

18 (1997).  "[A]n unauthorized transfer of funds is sufficient to constitute disposal of a plaintiff's

19 funds in a manner inconsistent with the plaintiff's rights.  *ESG Cap. Partners, LP v. Stratos*, 828

20 F. 3d 1023, 1038 (9th Cir. 2016) (citing *Virtanen v. O'Connell*, 140 Cal. App. 4th 688, 707–08

21 (2006)).

22       Here, Plaintiff has sufficiently alleged Goyette's assumption of control and application of

23 the property to its own use by alleging an unauthorized transfer of funds, including $5,000 to

24 Goyette itself.  (ECF No. 1 at 9.); *ESG Cap.*, 828 F. 3d at 1038 (holding the plaintiff satisfied the

25 second element of conversion by alleging the defendant made an unauthorized transfer of funds).

26 Since Plaintiff alleges all parties agreed not to distribute the funds without Plaintiff's permission,

27 Goyette's transfer disposed of the funds in a manner inconsistent with Plaintiff's rights.  (ECF

28 No. 1 at 8); *ESG Cap.*, 828 F. 3d at 1038.  While Plaintiff voluntarily transferred the funds to

13

Goyette, Plaintiff did not consent to Goyette's exercise of dominion, but rather retained its ownership rights and provided specific instructions on the manner in which Goyette could distribute the funds. *Virtanen*, 140 Cal. App. 4th at 707–08 (holding a plaintiff that voluntarily transferred property to be held in escrow did not consent to the defendant's unauthorized transfer). Though the eventual transfer of funds to Bioscience would indeed be consistent with the parties' intentions, it was Plaintiff, not Goyette, that retained the right to choose when the transfer would occur (by way of the escrow instructions), if at all. *Chase Inv. Servs. Corp.*, 748 F. Supp. 2d at 1179, 1181) (finding the plaintiff retained its ownership interest while its property was held in escrow and that the defendant was liable for conversion by making a transfer without the plaintiff's consent).

Therefore, Plaintiff has sufficiently alleged facts to support the second element of conversion.

<em>iii.    Damages</em>

Plaintiff alleges, as a result of Goyette's conduct, it has suffered damages of $999,995 that are unrecovered to date. (ECF No. 1 at 10).

The normal measure of damages for conversion is "[t]he value of the property at the time of the conversion" and "[a] fair compensation for the time and money properly expended in pursuit of the property." Cal. Civ. Code, § 3336; *see also Chase Inv. Servs. Corp.*, 748 F. Supp. 2d at 1181 (quoting *Virtanen*, 140 Cal. App. 4th at 708).

Here, Plaintiff has alleged $999,995 plus interest in damages. This is the alleged value of the property at the time of conversion. Accordingly, Plaintiff has sufficiently alleged facts to support the third element of conversion.

Therefore, as Plaintiff has met its burden to allege each element of a claim for conversion, Plaintiff has sufficiently alleged a plausible claim for conversion. *See Iqbal*, 556 U.S. at 680. Goyette's motion to dismiss Plaintiff's claim for conversion pursuant to Rule 12(b)(6) is hereby DENIED.

B.  <u>Breach of Fiduciary Duty</u>

Goyette seeks dismissal of Plaintiff's breach of fiduciary duty claim on the basis that: (1)

14

1   Goyette was not an escrow holder for Plaintiff thus it owed Plaintiff no fiduciary obligation; and

2   (2) Plaintiff fails to allege the existence of any enforceable escrow instruction, nor any breach.

3   (ECF No. 11-1 at 15–16.)  In opposition, Plaintiff argues it sufficiently alleged Goyette agreed to

4   act as escrow and that all parties agreed on the escrow instructions.  (ECF No. 13 at 22.)

5          The elements of a claim for breach of fiduciary duty are: (1) the existence of a fiduciary

6   relationship; (2) the breach of that relationship; and (3) damages proximately caused by the

7   breach.  *Gulf*, 2008 WL 2383927 at *3 (citing *Mosier v. S. Cal. Physicians Ins. Exch.*, 63 Cal.

8   App. 4th 1022, 1044 (1998).  The Court will examine each element in turn.

9                              *i.      Whether a fiduciary relationship existed*

10         At issue is a dispute as to whether a fiduciary relationship existed premised on whether

11   Goyette served as an escrow holder for the transaction.

12         "An escrow involves the deposit of documents and/or money with a third party to be

13   delivered on the occurrence of some condition.  An escrow holder is an agent and fiduciary of the

14   parties to the escrow.  *Summit Fin. Holdings, Ltd. v. Cont'l Laws. Title Co.*, 27 Cal. 4th 705, 711

15   (2002), *as modified on denial of reh'g* (May 15, 2002) (internal quotations and citations omitted).

16         Here, Plaintiff alleges "Goyette agreed to provide transactional escrow services for the

17   [Plaintiff]-Bioscience loan" and that "Bioscience and Goyette agreed the funds provided to

18   escrow would never leave [escrow] except on the terms as required under the loan agreement and

19   as instructed by [Plaintiff]."  (ECF No. 1 at 8.)  Taking Plaintiff's allegations as true, an escrow

20   was created when Plaintiff transferred its funds to Goyette.  *Pasternak v. Boutris*, 99 Cal. App.

21   4th 907, 919 (2002) (finding an escrow existed when lenders, for the purpose of transferring their

22   money to a borrower, delivered it to a third party (the escrow holder), to be held until the

23   performance of a condition or event).  Despite Goyette's contention that, to create an escrow

24   account, the underlying contract between the two original parties must contemplate the escrow

25   account (ECF No. 11-1 at 15), there is no such requirement, *see* Cal. Fin. Code § 17003 (defining

26   escrow); *Pasternak*, 99 Cal. App. 4th at 919–20 (finding no requirement of a

27   contract).  Accordingly, Goyette served as an escrow holder and thus had a fiduciary duty to

28   Plaintiff.  *See Summit*, 27 Cal. 4th 705, 711.

1    Taking Plaintiff's allegations as true, Plaintiff has sufficiently alleged facts to support the

2    first element of a breach of a fiduciary duty claim.

3                    ii.      *Whether Goyette Breached the Fiduciary Relationship*

4    Plaintiff alleges Goyette breached its fiduciary duty by disbursing the $999,995 in

5    violation of the escrow instructions.  (ECF No. 1 at 11.)  Goyette argues it did not receive

6    enforceable escrow instructions and that a fiduciary duty was not established until September 7,

7    2019, which was after the funds had been disposed by Goyette.  (ECF No. 11-1 at 16–17.)

8    Whether a breach of fiduciary duty has occurred is a question of fact.  *Gulf*, 2008 WL

9    2383927, at *3 (citing *Amtower v. Photon Dynamics, Inc.*, 158 Cal. App. 4th 1582, 1599 (2008)).

10   As a fiduciary, "an escrow holder must comply strictly with the instructions of the parties."

11   *Summit Fin. Holdings, Ltd.*, 27 Cal. 4th at 711.  If an escrow holder violated the escrow

12   instructions, it would be liable for any loss occasioned by its breach of duty.  *Kelly*, 148 Cal. App.

13   2d at 217.

14   Goyette disputes Plaintiff's allegation that Goyette agreed to serve as escrow and that

15   Goyette agreed to not distribute the funds without Plaintiff's consent.  However, this is a factual

16   dispute.  Accordingly, it would be inappropriate for the Court to resolve genuinely disputed facts

17   at the pleading stage.  *See Cruz*, 405 U.S. at 322.  As such, at this stage, the Court must accept as

18   true that Goyette agreed to serve as escrow holder and that all parties agreed to not distribute the

19   funds without Plaintiff's consent.

20   Goyette's argument that a fiduciary duty was not established (and thus could not have

21   been breached) until September 7, 2019, is unsupported in the complaint.  Rather, Plaintiff alleges

22   all parties agreed the funds would remain in escrow "except on the terms as required under the

23   loan agreement and as instructed by [Plaintiff]."  (ECF No. 1 at 8.)  The September 7 instructions

24   Goyette points to were allegedly a written confirmation of the escrow instructions, not the first

25   receipt of escrow instructions.[6]  (ECF No. 1 at 9.)

26   ───────────────

27   [6]    The parties do not provide a specific date for an initial receipt of escrow instructions.
     However, the Complaint appears to allege instructions were provided at some point between July
     2, 2019 — when the parties entered into the contract — to July 10, 2019 — when the funds were

28   transferred.  (*See* ECF No. 1 at 8–9.)

16

Accordingly, giving Plaintiff the benefit of every reasonable inference, *see Retail Clerks*, 373 U.S. at 753 n.6), Plaintiff's allegation that Goyette breached its fiduciary duty by disbursing the $999,995 in violation of the escrow instructions (ECF No. 1 at 11) is sufficient to support the second element of a breach of a fiduciary duty claim.  (*See Kelly*, 148 Cal. App. 2d at 217.)

*iii.*     *Damages*

Plaintiff alleges "[a]s a proximate result of Goyette's breach of fiduciary duty, Plaintiff was damaged." (ECF No. 1 at 12.)  Goyette offers no argument disputing the alleged damages, other than what has been outlined in the previous sections.

"Where a party's money is deposited in escrow and is disposed of without compliance with the escrow instructions, he is entitled to recover from the escrow holder such damages as he may have suffered." (*See Kelly*, 148 Cal. App. 2d at 217.)

Accordingly, Plaintiff has sufficiently alleged facts to support the third element of a breach of a fiduciary duty claim.  Therefore, as Plaintiff has met its burden to allege each element of a claim for breach of fiduciary duty, Plaintiff has sufficiently alleged a plausible claim for breach of fiduciary duty.  *See Iqbal*, 556 U.S. at 680.  Goyette's motion to dismiss Plaintiff's claim for breach of fiduciary duty is hereby DENIED.

**V.     CONCLUSION**

For the foregoing reasons, Defendants' Motions to Dismiss (ECF Nos. 11, 10) are hereby DENIED.  Defendants are ordered to file an answer not later than twenty-one (21) days after the electronic filing date of this Order.

IT IS SO ORDERED.

DATED:  February 24, 2022

Troy L. Nunley
United States District Judge

17